UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LOWREY, MARILYN LOWREY and FAIR HOUSING CENTER OF SOUTHEASTERN MICHIGAN, INC.,

Plaintiffs,

v.

BEZTAK PROPERTIES, INC.; BEZTAK COMPANIES, INC.; BILTMORE PROPERTIES COMPANIES, INC.; UPTOWN INVESTORS, LLC; UPTOWN INVESTORS LLC II; MONOGRAM HOMES; WARNER, CANTRELL & PADMOS, INC., and LOONEY RICKS KISS,

Defendants.
_______________________________________/

CIVIL ACTION NO. 06-13408

DISTRICT JUDGE NANCY G. EDMUNDS

MAGISTRATE JUDGE VIRGINIA MORGAN

**REPORT AND RECOMMENDATION TO DENY MOTION FOR CONTEMPT AND SANCTIONS**

Pending before the court is plaintiff's Motion for Contempt and Sanctions (#93). For the reasons discussed in this Report, it is recommended that the motion be denied. The request for contempt and sanctions is premature and was filed prior to consultation with opposing counsel. In addition, plaintiffs have not met the standard for imposing contempt or sanctions as there has been no finding of any underlying liability, and no clear and convincing evidence of disregard of

the court order. Therefore, it is recommended that the motion for contempt and sanctions be denied.

*Background*

Plaintiff Michael Lowery rents an apartment at the Uptown Apartment Complex in Canton, Michigan, a relatively new project in Canton Township. He is mobility impaired and uses a wheel chair. After he moved into his apartment, which was represented to be "handicapped accessible," he sued the owners, contractors, managers, architects, and builders of the complex, as well as the governing entity Canton Township[1] alleging violations of various disability rights laws. Plaintiff Lowery contends that, with respect to his apartment and the complex as a whole, the defendants violated the ADA, 42 USC §12181 *et seq*., the Fair Housing Act, 42 USC §3601 *et seq.*, and the Michigan Person with Disabilities Civil rights Act, MCL §37.1301 *et seq*. Plaintiff's mother Marilyn Lowery who visits him at the complex was added as an additional plaintiff in June, 2007, by stipulation of the parties. The Fair Housing Center of Southeast Michigan was also added as an intervener-plaintiff. (#52)

*The Claims*

In the second amended complaint (filed 9/7/07), plaintiffs allege claims against these defendants under the FHAA (Count I), Title III of the ADA (Count II), and the Michigan PWECRA (Count III). The Fair Housing Act claims are alleged to be subject to the requirements of 42 U.S.C. §3604(f)(7)(A) and (F)(3)(c). Title III of the ADA, which prohibits

[1]Canton Township was not a party to this case at the time the Agreement was reached and plaintiff does not seek sanctions against them in this motion.

discrimination against disabled individuals in any place of public accommodation. 42 U.S.C. § 12182(a); *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1020 (9th Cir.2002). Title III of the ADA establishes that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Liability is imposed upon "any person who ... operates a place of public accommodation" that discriminates against an individual on the basis of disability. *Id.* Aside from attorney's fees, the only remedy available to a private litigant under Title III of the ADA is injunctive relief. 42 U.S.C. § 12188(a)(1); *see also Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002). Defendants deny liability and no determination of liability has been made.

The undersigned was designated as a Special Master to conduct discussions with counsel and the parties in order to facilitate a settlement. Pursuant to those discussions, agreements were eventually reached with respect to both interior modifications of Mr. Lowery's apartment and exterior modifications to sidewalks, parking lots, and an overall two stage plan for additional exterior modifications. Without admission of or findings of liability, defendants undertook several projects, including changes requested by Mr. Lowery to the interior of his unit. These were all made to his satisfaction. In addition, defendants made exterior modifications to the clubhouse parking, Mr. Lowery's building parking, sidewalk levels on an accessible route, and other changes, the cost of which was several hundred thousand dollars. (#58). Defendants conducted an extensive survey of all concrete in phase one (the access route for Mr. Lowery) and

formulated a plan for changes to curb ramps within that portion, as well as a plan for phase Two (the remainder of the complex). Defendants made adjustments or replaced sidewalk slabs at its cost or by requiring subcontractors to redo their work. Defendants assumed the cost for the civil engineering required for the modifications as well as the cost for the work itself.

These completed modifications (retrofits) were directly related to Mr. Lowery's access within his unit and within the complex. They were completed in the Fall of 2007. As part of the accord reached between the parties, in August, 2007, plaintiffs withdrew the previous Motion for Preliminary Injunction under Title III of the ADA. Subsequently, plaintiffs filed a second amended complaint to which answers were filed by the various defendants. The filings were concluded in January, 2008.

Then several months later, in June 2008, the Lowery plaintiffs filed the instant Motion for Contempt and Sanctions. The Motion was filed without contacting counsel for the defendants and defendants argue that the failure to seek concurrence should be sufficient to dismiss the motion. Plaintiffs' counsel admits a violation of Local Rule 7.1 in the motion. "Rather than argue with each of the seven defendants and their counsel, plaintiff assumed that defendants to not acquiesce in this Motion." (#98 at 13-14) At this time, the interests of judicial economy would not be served by dismissing the motion for a procedural violation. Thus, it is not recommended that the motion be dismissed on that ground.[2]

[2]However, it is likely that contacting the defendants could have obviated the filing of the motion, at least at the time it was filed. Therefore, with respect to any subsequent request for attorney's fees by plaintiff's counsel, this factor should be noted.

In the motion, the Lowery plaintiffs concede that defendants "made many of the ordered retrofits but in several instances violated the construction standards set by the Order." (#93, 2) In October, 2007, plaintiff's counsel told all defense counsel that there were numerous accessibility violations and orally provided some examples[3]. Counsel for defendants indicated that they would investigate. It is unclear whether defendants made additional corrections. In support of the claim that the construction standards were violated, plaintiffs offer only the affidavit of Marguerite Claire Finnegan, who is the daughter of plaintiff's counsel and a paralegal with the firm. She offers her measurements made some eight months after completion of the projects and after the winter season[4], as well as legal statements and conclusions, and her opinion of the facts in support of the motion. For example, she opines that a particular sidewalk ramp is "visually frightening, and in my opinion, Mike Lowery could easily roll off the north edge of the ramp and plunge into the street." (Declaration, ¶5(b), (c), and (d). She states that various sidewalk slopes exceed 5% but does not specify by how much. Id. She also states that 11 of 25 curb ramps "have transitions" where the curb ramp is higher than the adjoining surface but does not identify which 11 are non-conforming. (Declaration, ¶ 6) No information is provided to indicate which of these alleged non-conforming ramp areas are materially inconsistent with the order.

[3]Apparently no written list was provided either then or later, until the filing of the motion.

[4]Defendants submit that the frost heave experienced throughout the winter results in changes to the concrete levels. No expert testimony is submitted to support that position.

Defendants argue that these deficiencies and the lack of supporting expertise militate against the grant of relief that plaintiff's are seeking. Defendants also suggest that an on-site inspection with the Special Master, plaintiffs, their attorney, defendants and their attorneys would be useful in determining whether any of defendant's retrofits fail to materially comply with the Settlement Order. The court agrees with the first argument, but disagrees with the second. While an on-site inspection with counsel and the magistrate judge may help to identify specific curb ramps and areas of concern, it would not address the important issues of whether the modifications comply with the applicable construction standards, whether differentials are within tolerances in the industry, what additional changes could/should be undertaken, and when and where those changes should be made. This is a determination that needs to be made by the court, but based on evidence from an expert, not on mere observations by paralegal with a ruler or the court's non-expert observations.

In a similar case with the same plaintiffs' counsel, Judge Rosen determined that an expert (Special Master) was needed. The court found that not only was vigorous supervision and oversight necessary, so was specialized knowledge. *(Center for Community Access and Paralyzed Veterans v. City of Detroit*, Case No. 05-73475, # 34, 36) Unlike that case, defendants here agreed to do certain modifications and these were done timely. Yet, some eight or nine months later, plaintiffs allege that they do not meet appropriate construction standards. This is, as Judge Rosen noted, a question which benefits from expertise. Since plaintiffs do not offer that here, and since the affidavit presented does not rise to a level of clear and convincing evidence, the motion should be denied.

Neither side has presented any testimony or opinion from an expert in this field. Since it is plaintiffs' motion for contempt and sanctions, plaintiffs have the burden to establish violations and that such violations would meet the criteria for contempt or sanctions. They have failed to meet that burden.

**Contempt**

In *International Union, United Mine Workers of America v. Bagwell* 512 U.S. 821-822, 2554 (U.S.,1994), the Supreme Court discussed the remedy of contempt. It noted that a criminal contempt fine is punitive and can be imposed only through criminal proceedings, including the right to jury trial. Plaintiffs do not appear to seek criminal contempt.

A contempt fine is considered civil and remedial if it either coerces a defendant into compliance with a court order or compensates the complainant for losses sustained. *United States v. Mine Workers,* 330 U.S. 258, 303-304. Where a fine is not compensatory, it is civil only if the contemnor has an opportunity to purge, such as with per diem fines and fixed, suspended fines. Most contempt sanctions share punitive and coercive characteristics, and the fundamental question underlying the distinction between civil and criminal contempt is what process is due for the imposition of any particular contempt sanction.[5] Id. As stated by the court, greater procedural protections are afforded for sanctions of indirect contempt. Certain indirect contempt is particularly appropriate for imposition through civil proceedings, including contempt

[5]Direct contempt, such as misbehavior in the courtroom, can be penalized summarily in light of the court's substantial interest in maintaining order and because the need for extensive fact-finding and the likelihood of an erroneous deprivation are reduced. That kind of contempt is not at issue here.

impeding the court's ability to adjudicate the proceedings before it and contempt involving discrete, readily ascertainable acts. *Id.* The court recognizes that "Willfulness is not a necessary element of civil contempt," and, accordingly, "evidence ... regarding ... good faith does not bar the conclusion ... that [the defendant] acted in contempt." *Harley-Davidson, Inc. v. Morris,* 19 F.3d 142, 148-49 (3d Cir.1994). But, here, without a determination of liability, a finding of contempt is not warranted.

In this case, plaintiffs allege that the modifications made by defendants pursuant to an agreed upon Order of Partial Settlement and Conditional Release fail to comply with pertinent federal laws and regulations governing use of and access to public facilities. To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order. *Harris v. City of Philadelphia,* 47 F.3d 1311 at 1326. The *Harris* elements must be proven by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt. *See Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir.1994); *Harris,* 47 F.3d at 1326. The first two elements are not in dispute; however, it should be noted that the changes were by agreement and were not ordered by the court based on a finding of violation of the ADA. Disobedience to the order is in dispute. This is an agreed upon order, one negotiated among the parties and one which the defendants agreed to effectuate. They have expended both time and money in an effort to meet their responsibilities under the order. The court and plaintiffs are aware of the work done by defendants in re-measuring sidewalk slabs, contracting for retrofits, and making other changes in the parking and access routes. Plaintiff must show that

the defendant disobeyed the order by evidence meeting a clear and convincing standard. This high evidentiary standard is not met by the affidavit proffered by plaintiffs. Aside from the lack of specialized knowledge of the paralegal regarding materials, frost heave, tolerances within the industry, and other circumstances, defendants were not provided an opportunity to test her conclusions and opinion by any deposition or inspection with her prior to the plaintiffs filing of the contempt motion. While failure to seek concurrence is not grounds for dismissing the motion, plaintiffs' failure to meet and review the claimed insufficiencies in the repair militates against a grant of contempt.

Accordingly, it is recommended that the motion be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: December 31, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 31, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan