UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LOWREY, MARILYN LOWREY and FAIR HOUSING CENTER OF SOUTHEASTERN MICHIGAN, INC.,

Plaintiffs,

v.

BEZTAK PROPERTIES, INC.; BEZTAK COMPANIES, INC.; BILTMORE PROPERTIES COMPANIES, INC.; UPTOWN INVESTORS, LLC; UPTOWN INVESTORS LLC II; MONOGRAM HOMES; WARNER, CANTRELL & PADMOS, INC., and LOONEY RICKS KISS,

Defendants.
_____________________________________/

CIVIL ACTION NO. 06-13408

DISTRICT JUDGE NANCY G. EDMUNDS

MAGISTRATE JUDGE VIRGINIA MORGAN

**REPORT AND RECOMMENDATION TO DENY MOTION FOR PRELIMINARY INJUNCTION**

Pending before the court is plaintiffs' Motion for Preliminary Injunction (#106). Plaintiffs seek a Preliminary Injunction against Canton Township for violations of Title II of the ADA and under Section 504 of the Rehabilitation Act. They seek a mandatory injunction ordering Canton Township to bring these and future services, programs, and activities into compliance, and to award them compensatory damages and attorney fees and costs. A hearing

was held before the magistrate judge.[1] For the reasons discussed in this Report, it is recommended that the motion be denied. The request for preliminary injunction is overly broad and not supported by a showing that the relevant factors weigh heavily and compellingly in plaintiffs' favor. Therefore, it is recommended that the motion for preliminary injunction be denied.

**Background**

Plaintiff Michael Lowery rents an apartment at the Uptown Apartment Complex in Canton, Michigan, a relatively new project in Canton Township. He is mobility impaired and uses a wheelchair. After he moved into his apartment, which was represented to be "handicapped accessible," he sued the owners, contractors, managers, architects, and builders of the complex, as well as the governing entity Canton Township alleging violations of various disability rights laws. Plaintiff Lowery contends that, with respect to his apartment and the complex as a whole, the defendants violated the ADA, 42 U.S.C. § 12181 *et seq*., the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Michigan Person with Disabilities Civil Rights Act, M.C.L. §37.1301 *et seq.* Plaintiff's mother Marilyn Lowery who visits him at the complex was added as an additional plaintiff in June, 2007, by stipulation of the parties. The Fair Housing Center of Southeast Michigan was also added as an intervener-plaintiff. (#52)

[1]The court notes that this hearing was singularly unhelpful. Plaintiffs did not present testimony bearing on the four factors relevant to the grant of a preliminary injunction. While testimony from Mr. Casari was useful to the parties in the context of discovery, matters relevant to the court's determination of the motion were only tangentially addressed. Live discovery depositions offered at a hearing do not take the place of a properly presented evidentiary basis for the motion.

**The Claims**

In the second amended complaint in count four, plaintiffs raise claims against Canton Township. Plaintiff's allege that Canton Township is liable for violations of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act and under Michigan state law. Title II of the ADA provides that no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132. Plaintiffs contend that "Canton Township's sidewalks are a public 'service, program, or activity' subject to the Act." Plaintiffs allege that the curb ramps, intersections, and sidewalks violate the ADA because they have cross slopes exceeding 2 percent and running slopes exceeding 8.33 percent. (¶52-54) Plaintiffs also contend that the actions of Canton Township constitute "intentional discrimination," entitling plaintiffs to a preliminary injunction. (¶55) In addition, plaintiffs argue that Canton Township violated 29 U.S.C. § 794, the Rehabilitation Act by it's failure to construct, alter, or maintain accessible services, programs, and activities (the aforementioned sidewalks, curb ramps, and intersections), also entitling them to the same relief. (¶58)

**Relief Requested**

Plaintiffs seek a preliminary injunction enjoining Canton Township "to immediately cease discriminating against plaintiffs." Plaintiff also ask the court to order Canton Township immediately to:

(A) Bring into compliance with the ADAAG or UFAS any of the Retail and Theater District's (the District's) sidewalks, curb ramps, parking and any other facilities that were altered or constructed after January 26, 1992. [A map is attached to the motion]

(B) Meet with the Lowery Plaintiffs to arrange methods successfully to make accessible by law to them any of the District's sidewalks, curb ramps, parking and any other facilities that were altered or constructed before January 26, 1992.

(C) Construct on the side containing the Canton Farmer's Market legally sufficient ADAAG/UFAS-compliant parking spaces on ADAAG/UFAS-compliant accessible routes connecting into the barn, the Bartlett-Travis House, to accessible porta johns, and to any booths or other conveyances that may operate at the site during farmer market days or any other days. Cease and desist from operating the Canton Farmer's Market until this is achieved, or until a court or Plaintiff-approved temporary accessible route (e.g., metal plates or wooden flooring, etc.) from accessible parking to each of these facilities is installed. [emphasis added]

(D) Cease and desist from conducting the theater district's "Historical Hike" until constructing the above described parking spaces, or until a Court or Plaintiff-approved temporary accessible route, as described above, is installed.

(E) Cease and desist booking new events into the Village Theater, and from renewing recurring events until constructing legally sufficient compliant parking spaces and accessible routes.

(F) Cease and desist from providing valet parking for events at the Village Theater until defendant complies with the ADAAG at sections 4.1.2(5) and 4.6.6.

(G) Complete fully each of these accessible upgrades no late than October 31, 2008[2] with any court or Plaintiff approved temporary measures occurring within two weeks from entry of the injunction; and to

(H) Meet and otherwise communicate with the Lowreys and/or their Counsel as often and as long as it takes to achieve these items within the ordered time frames.

Plaintiffs indicated that some of their requests to cease and desist were withdrawn.

**Standard of Review**

The granting of a preliminary injunction is committed to the sound discretion of the trial court. United States v. Any And All Radio Station Transmission Equip., 204 F.3d 658, 665 (6th Cir. 2000). Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy whose purpose generally is to preserve the *status quo.* Here, the plaintiffs seek an order altering the *status quo*, imposing mandatory duties on a governmental entity including construction of facilities, cancellation of community events, and approval of defendants' future actions contingent on their determination. From a procedural basis, the motion is premature. Minimal discovery has been conducted and no determination by a court has been made regarding defendant's liability or plaintiffs' entitlement to relief. Turning to the merits of the motion, plaintiffs have not met their burden required for the court to grant the relief.

To sustain its burden, the moving party must demonstrate its right to the extraordinary remedy of injunctive relief by clear and convincing evidence. Patio Enclosures, Inc. v. Herbst, 39 F.Appx. 964, 969 (6th Cir. 2002), Garlock, Inc. v. United Seal, Inc., 404 F.2d 256, 257 (6th

[2]The motion was filed August 1, 2008.

Cir.1968); Deck v. City of Toledo, 29 F.Supp.2d 431, 433 (N.D. Ohio 1998). The court's inquiry is directed to four factors in addressing a motion for a preliminary injunction. As stated by the Sixth Circuit: "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati, 363 F.3d 427, 432 (6th Cir.2004) (quoting Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp., 110 F.3d 318, 322 (6th Cir.1997) (citations omitted)). *See also* Edward Rose & Sons, 384 F.3d at 261 (quoting Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994)). No single factor is determinative. Michigan Bell Tel. Co. v. Engler, 257 F.3d 587, 592 (6th Cir. 2001).

A district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved. Edward Rose & Sons, 384 F.3d at 261. None of these four factors is a prerequisite to the issuance of a preliminary injunction; rather the Court must balance all four factors. Neveux v. Webcraft Tech., Inc., 921 F.Supp. 1568, 1570-71 (E.D. Mich.1996)(citing Performance Unlimited v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir.1995)).

Since generally the primary purpose of a preliminary injunction is to maintain the *status quo* until a final decision on the merits can be reached, Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), in cases where the plaintiff seeks a preliminary

injunction not to maintain the *status quo* but rather to alter it, the plaintiff must "satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in [his or her] favor." SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991), cited with approval in Barber *ex rel.* Barber v. Dearborn Public Schools, 286 F.Supp.2d 847, 851 -852 (E.D. Mich. 2003) "Like all equitable remedies, a preliminary injunction will not issue unless the right to relief is clear." Barber, 286 F.Supp. at 852. In determining whether to issue a preliminary injunction, the Court is not required to resolve "'doubtful questions of law or disputed questions of fact.'" Cincinnati Sub-Zero Prod. v. Augustine Med., Inc., 800 F.Supp. 1549, 1557 (S.D. Ohio 1992). Id.

**Analysis/ Preliminary Injunction Standard**

*(1) Whether the movant has a strong likelihood of success on the merits.*

The first factor this Court must weigh in determining whether preliminary injunctive relief is warranted is whether plaintiffs have established a substantial likelihood or probability of success on the merits. To meet this burden, the plaintiff's evidence must more than outweigh the evidence opposed to it. Draudt v. Wooster City Sch. Dist., 246 F.Supp.2d 820, 825 (6th Cir.2003). "The plaintiff's evidence must persuade the court that [his] claims are highly probable ... or create a firm belief or conviction in the facts the plaintiff seeks to establish." Id. (citations omitted). Having considered the evidence and arguments presented in this case, the Court concludes that he has failed to demonstrate a sufficient likelihood of prevailing on the merits to support the requested injunctive relief.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a prima facie case under Title II of the ADA, a plaintiff must establish that "(1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." Jones v. City of Monroe, 341 F.3d 474, 477 (6th Cir.2003).

Mr. Lowery and Mrs. Lowery argue that the defendant Township engaged in intentional discrimination against them in violation of Title II of the ADA through its failure to install proper curb cuts and sidewalks at intersections. Courts in this circuit and elsewhere have found that such actions as the failure to install handicapped-accessible sidewalks and to train its employees about the ADA affects all disabled persons, not just a particular plaintiff. Thus, the individual plaintiffs cannot demonstrate that Canton Township intentionally discriminated against them specifically by failing to undertake these actions. "[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular." Tyler v. City of Manhattan, 118 F.3d 1400, 1403 (10th Cir. 1997), *see also* Dillery v. City of Sandusky, 398 F.3d 562, 567 -569 (6th Cir. 2005).

The affidavit of counsel's daughter, a paralegal with counsel's firm, who took various measurements and photographs is not helpful in determining which areas are non-conforming or

in assessing the level of non-conformity.[3] As with her affidavit offered in support of the Motion for Contempt, the subject of an earlier Report, the slopes of various portions are generally described but no particularity is provided. The information regarding her observation of there being full parking lots at various events does not seem material to the issuance of the injunction.

Plaintiff provided an affidavit, chart and Field Notes by David Esau which indicate that particular curb ramps, sidewalks, and running slopes do not meet federal accessibility requirements. Plaintiffs did not proffer Mr. Esau's testimony at the hearing. Plaintiffs did attempt to call Township Supervisor Tom Yack, who had been subpoenaed but did not appear. He was retiring and did not appear.[4]

The Township in its response to the motion attached the affidavit of Lawrence Ancypa, an employee of the firm of Hubbell, Roth & Clark, Inc. (HRC), Consulting Engineers. (#118-3) His qualifications and background are set forth in that document. He has 42 years of experience. As he explains, there is an International Building Code adopted by Michigan and approved by the U.S. Department of Justice as being compliant with ADAAG. From his review of the plaintiffs' materials, he believes that the plaintiffs are attempting to extend the applicability of the ADAAG and UFAS to areas which are beyond their coverage. He also notes that many of the items listed in the Complaint have been or are being considered by the Township and that the

---

[3]She did not testify although the court recalls that she was present in the courtroom or chambers at the time of the hearing.

[4]This unilateral determination by Canton Township is not supported by any pre-trial request to the court because the subpoena was not served until the day before the hearing. The township did offer the testimony of Mr. Tom Casari, an engineer who was familiar with the circumstances and was cross examined by both sides. See separate order.

Township had previously budgeted and planned for these, with some being undertaken even before the filing of the lawsuit. (¶ 6, 7, 8) The Township has leveled accessible parking spaces, regraded the main drive to the barn, provided an accessible alternative path to a wheelchair accessible portable toilet, and undertaken other improvements. (¶ 8,9) He also challenges some of the measurements taken by the paralegal and/or her interpretation that these evidence a violation or what each means, and notes that the measurements taken by his office differ from those of the paralegal.

In addition, the Township points out that it simply does not own the property on which the majority of plaintiffs' alleged violations exist. It submits that the majority of plaintiffs violations occur either within the Wayne County right of way, or on private property.[5] The Township contends that the public right of way issue is critical because ADAAG contains no regulations covering public rights of way and because Michigan townships do not have jurisdiction over public roads. While plaintiffs dispute some of these facts, they have not made a strong showing that they would prevail.

It is possible that after further discovery some of plaintiffs' positions may be sustained. It also appears that the Township has undertaken a series of projects to modify areas of which plaintiffs complain. However, plaintiffs have in no way established by a standard of clear and convincing that there is a strong likelihood of success on the merits. In addition, the broad and

[5]Plaintiffs dispute the Township's legal position and argue that the Township can fix/repair/remediate these facilities.

far-reaching requests for relief are not justified by the evidence presented. The court finds that plaintiffs have not met their burden on the first factor.

*(2) Whether the movant would suffer irreparable injury without the injunction.*

At this point, it is not shown that plaintiff would suffer irreparable injury. The court asked each side to submit proposed findings of fact and conclusions of law. Plaintiffs' Post Hearing statement does not articulate the four factors and does not discuss any facts which would establish irreparable injury. In the motion, plaintiffs state that "Because each statute [ADAAG and UFAS] expressly authorizes preliminary injunctive relief, the Court should presume irreparable harm." The plaintiffs cite as support the district court's decision in United States v. Edward Rose & Sons, 246 F. Supp.2d 744 (E.D. Mich. 2003)(Roberts, J). It should be noted that that case was brought by the Department of Justice, not a private plaintiff against a private developer and dealt with a building under construction. Upon review, the Sixth Circuit stated that as to the lower court's determination with respect to presumption of irreparable injury: "We find any error by the district court of no consequence." 384 F.3d 258, 264 (6th Cir. 2004). That case presented the narrow issue of whether the "front door was the 'primary entrance' used by public and guests and as such, it was a 'public' or 'common area' that the FHA mandates be accessible." Id. at 261. The Sixth Circuit continued:

> "We need not decide whether *CSX* [*CSX Transportation v. Tennessee Sate Board of Equalization*, 964 F.2d 548 (6th Cir. 1992)] controls or whether a statute must mandate another showing that displaces the traditional equitable factors because we find it immaterial to the disposition of this case. We balance the equitable factors, and none is a prerequisite. *Washington v. Reno*, 35 F.3d 1093, 1099. The other equitable factors, particularly the

> strong likelihood of success on the merits, outweigh any lack of irreparable harm, with or without any presumption."

384 F.3d at 264.

The court balanced the interests in favor of the government, found a strong likelihood of success on the merits, and affirmed the injunction. Unlike that case, plaintiffs here sue a governmental entity and seek a host of remedial actions without any showing of irreparable injury or strong likelihood of success on the merits.

*(3) Whether issuance of the injunction would cause substantial harm to others*

Plaintiffs contend that the "balance of harm tips decidedly towards plaintiffs." Plaintiffs do not discuss the harm to others. Plaintiffs seek to stop a variety of events benefitting the community as a whole, to stop valet parking (which would assist other mobility impaired community members) and impose an unknown amount of costs and taxes on a municipality not yet shown to be liable or even responsible for the areas of concern. This factor does not merit injunctive relief.

*(4) Whether the public interest would be served by issuance of the injunction.*

In the two sentence argument in the motion, plaintiffs contend that this factor also favors them. They cite to Judge Katz's 1998 opinion in Deck v. City of Toledo, 29 F. Supp.2d 431,434 (N.D. OH 1998). Plaintiffs there were represented by the same counsel as here. That preliminary injunction was limited to an order requiring defendant City to bring 13 listed ramps into compliance with the ADA. Deck v. City of Toledo, 76 F. Supp 2d 816, 817 (N.D. OH 1999). In a later decision in the same case, Judge Katz declined to enter an injunction seeking

broad based relief similar in nature to that requested here. He addressed the plaintiffs' request on a motion for summary judgment. Judge Katz described the request as follows:

> The final issue before the Court on Plaintiffs' motion for summary judgment is whether it is appropriate to grant the relief requested by Plaintiffs on summary judgment. Plaintiffs have requested remedies that include virtually the entire known universe of types of permanent injunctive relief. They have requested a reparative injunction ordering the City to bring all curb ramps that have been installed since the effective date of ADA into compliance with the ADA. They have requested a preventive injunction ordering the City to refrain from any further violations of the ADA. They have requested a prophylactic injunction ordering the City to establish and implement an effective plan to ensure compliance with the ADA. And they have requested a number of reporting and inspection requirements that are reminiscent of structural injunctions: specifically, they want the City to (1) identify all intersections where sidewalks have been reconstructed or streets resurfaced since 1992, (2) inspect and report to Plaintiffs the precise location of all ramps that fail to conform to the ADAAG or where ramps are absent, and (3) submit periodic reports to Plaintiffs detailing progress in identifying and correcting the defective ramps.
>
> It is clear that the entry of a mandatory injunction requiring the City to bring itself into compliance with the ADA will be proper at some point in this case. The Court finds that issuance of such an injunction at this juncture, on a motion for summary judgment, would be premature, however. Further discovery is needed to identify all intersections and streets where sidewalks have been reconstructed or streets resurfaced since May 6, 1996, and the extent to which curb ramps installed at those locations comply with the ADA. Further evidence must be taken on the extent to which the City has adopted policies and procedures aimed at ensuring compliance with the ADA. Further evidence must be taken to determine a schedule for replacing existing ramps or

> installing ramps where none exist. Therefore, no injunction will be entered at this time.[6]

76 F.Supp.2d 816, 824 (N.D. OH 1999).

Thus, it appears that at the present stage of the case, the injunctive relief requested by plaintiffs is not warranted.

**Conclusion**

Plaintiff has failed to meet the standard under Fed.R.Civ.P. 65. Accordingly, it is recommended that the motion for preliminary injunction be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

[6] It does not appear from a review of the docket, however, that a mandatory injunction ever issued.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 8, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 8, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan