UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL & MARILYN LOWERY,<br>      Plaintiff,<br>and<br>FAIR HOUSING CENTER,<br>      Intervenor-Plaintiff,<br>v.<br><br>BEZTAK PROPERTIES, INC., BEZTAK COMPANIES, INC., BILTMORE PROPERTIES COMPANIES, INC.,<br>UPTOWN INVESTORS, L.L.C.,<br>UPTOWN INVESTORS, L.L.C. II, MONOGRAM HOMES;<br>WARNER, CANTRELL & PADMOS, INC.;<br>LOONEY, RICKS, KISS, and CANTON TOWNSHIP,<br>      Defendants. | Case #06-13408-NGE-MKM<br><br>Hon. Nancy G. Edmunds<br><br>Special Master Virginia Morgan |
| J. Mark Finnegan (P68050)<br>Heberle & Finnegan, PLLC<br>Attorneys for Plaintiffs Lowery<br>2580 Craig Road<br>Ann Arbor, MI 48103<br>(734) 302-3233<br>hffirm@comcast.net<br><br>Brett Rendeiro (P64972)<br>Varnum, Riddering, Schmidt & Howlett, LLP<br>Attorneys for Defendant Warner, Cantrell & Padmos, Inc.<br>39500 High Pointe Blvd, Suite 150<br>Novi, MI<br>(248) 567-7400<br>barendeiro@varnumlaw.com<br><br> Stephen M. Dane<br>Relman & Dane, PLLC<br>Attorneys for Fair Housing Center<br>1225 19th Street, NW, Suite 600<br>Washington, D.C. 20036<br>sdane@relmanlaw.com | Megan P. Norris (P39318)<br>Leigh R. Greden (P61859)<br>Miller, Canfield, Paddock and Stone, PLC<br>Attorneys for Defendants Beztak Properties, Inc., Beztak Companies, Inc., Uptown Investors, LLC, and Monogram Homes<br>101 N. Main, 7th Floor<br>Ann Arbor, MI  48104<br>(734) 663-2445<br>greden@millercanfield.com<br><br>Theresa L. Kitay<br>Law Office of Theresa L. Kitay<br>Attorney for Defendant Looney, Ricks, Kiss<br>578 Washington Blvd., Suite 836<br>Marina Del Ray, CA  90292<br>(310) 578-9134<br>tkitay@kitaylaw.net |

**STIPULATED ORDER OF FINAL SETTLEMENT AND FULL RELEASE BETWEEN FAIR HOUSING CENTER OF SOUTHEASTERN MICHIGAN AND CERTAIN DEFENDANTS**

THIS STIPULATED ORDER OF FINAL SETTLEMENT AND FULL RELEASE (hereinafter "Agreement") is made between the **FAIR HOUSING CENTER OF SOUTHEASTERN MICHIGAN, INC.** ("FHC"), and **BEZTAK PROPERTIES; BEZTAK COMPANIES; UPTOWN INVESTORS, L.L.C.; UPTOWN INVESTORS II L.L.C.; MONOGRAM HOMES, INC.; WARNER, CANTRELL & PADMOS, INC.;** and **LOONEY, RICKS, KISS, INC.** (collectively these parties are referred to as "Defendants").

## RECITALS

WHEREAS, Michael Lowrey filed a Complaint (the "Lawsuit") in the United States District Court for the Eastern District of Michigan (the "Court"), Case #06-13408, against Beztak Properties (erroneously named "Beztak Properties, Inc."), on or about July 21, 2006;

WHEREAS, Michael Lowrey filed a First Amended Complaint (the "First Amended Lawsuit") in the United States District Court for the Eastern District of Michigan, Case #06-13408-NGE-MKM, against Beztak Properties (erroneously named "Beztak Properties, Inc."), Beztak Companies (erroneously named "Beztak Companies, Inc."), Biltmore Properties Companies, Inc., Uptown Investors, L.L.C., Uptown Investors II, L.L.C. (erroneously named "Uptown Investors, L.L.C. II"), Monogram Homes, Inc., Warner, Cantrell & Padmos, Inc., and Looney, Ricks, Kiss (aka Looney Ricks Kiss Architects, Inc.) on or about September 20, 2006;

WHEREAS, the FHC intervened in this case as an Intervenor- Plaintiff on June 6, 2007;

WHEREAS, Michael Lowrey and Marilyn Lowrey filed a Third Amended Complaint (the "Third Amended Lawsuit") in the United States District Court for the Eastern District of Michigan, Case #06-13408-NGE-MKM, against Beztak Properties (erroneously named "Beztak Properties, Inc."), Beztak Companies (erroneously named "Beztak Companies, Inc."), Biltmore Properties Companies, Inc., Uptown Investors, L.L.C., Monogram Homes, Inc., Warner, Cantrell & Padmos, Inc., Looney, Ricks, Kiss (aka Looney Ricks Kiss Architects, Inc.), Canton Township, and other parties, on or about May 4, 2009;

WHEREAS, FHC's Complaint as an Intervenor-Plaintiff includes allegations that Defendants designed, constructed, and/or operate(d) the Uptown Apartment complex in Canton, Michigan ("Uptown") in violation of the Americans with Disabilities Act ("ADA"), Fair Housing Act ("FHA"), and/or Michigan Persons With Disabilities Civil Rights Act ("PWDCRA");

WHEREAS, Defendants deny in their entirety the claims raised by FHC;

WHEREAS, Defendants and the FHC desire to resolve and settle all of the FHC's claims that arose anytime before the date on which the FHC signs this Agreement; and

WHEREAS, Defendants and the FHC shall be referred to herein as "Settling Parties";

## STATEMENT OF AGREEMENT

NOW, IN CONSIDERATION of the mutual promises and covenants contained in this Agreement and other good and valuable consideration – the receipt and sufficiency of which the Settling Parties each respectfully acknowledge – the Settling Parties agree as follows:

1. *Definitions.* As used in this Agreement:

(a) The term "Michael Lowrey" is defined as Michael Lowrey and his representatives, agents, heirs, administrators, executors, successors, personal representatives, and assigns.

(b) The term "Marilyn Lowrey" is defined as Marilyn Lowrey and her representatives, agents, heirs, administrators, executors, successors, personal representatives, and assigns.

(c) The Fair Housing Center of Southeastern Michigan, Inc. ("FHC") is defined to include the Fair Housing Center; the past, present, or future parent, affiliated, related, and/or subsidiary entities of FHC; and the past, present, or future directors, shareholders, officers, insurers, employees, agents, attorneys, partners, accountants, joint venturers and representatives of FHC.

(d) The term "Beztak Properties" is defined to include Beztak Properties; and the past, present, or future parent, affiliated, related, and/or subsidiary companies of Beztak Properties.

(e) The term "Beztak Companies" is defined to include Beztak Companies; and the past, present, or future parent, affiliated, related, and/or subsidiary companies of Beztak Companies.

(f) The term "Uptown Investors, L.L.C." is defined to include Uptown Investors, L.L.C.; and the past, present, or future parent, affiliated, related, and/or subsidiary companies of Uptown Investors, L.L.C.

(g) The term "Monogram Homes, Inc." is defined to include Monogram Homes, Inc.; and the past, present, or future parent, affiliated, related, and/or subsidiary companies of Monogram Homes, Inc.

(h) The parties identified in paragraphs 1(d)-(g) above shall be referred to collectively as the "Owner/Contractor Defendants".

(i) The term "Warner, Cantrell & Padmos, Inc." is defined to include Warner, Cantrell & Padmos, Inc.; and the past, present, or future parent, affiliated, related, and/or subsidiary companies of Warner, Cantrell & Padmos, Inc. Warner, Cantrell & Padmos, Inc. shall be referred to as the "Engineer Defendant".

(j) The term "Looney, Ricks, Kiss" is defined to include Looney, Ricks, Kiss Architects, Inc.; and the past, present, or future parent, affiliated, related, and/or subsidiary companies of Looney, Ricks, Kiss Architects, Inc. Looney, Ricks, Kiss shall be referred to as the "Architect Defendant".

(k) The term "ANSI" is defined as the American National Standards Institute.

(l) The term "Units" is defined as all ground floor residential units located in the development known as Uptown Apartments, located in Canton, Michigan, 48187, as well as all residential units located in Liner Buildings A and B located at the corner of Cherry Hill Road and Ridge Road, Canton, Michigan.

2. *Exterior Modifications.* The Owner / Contractor Defendants and the Engineer Defendant shall complete the following physical modifications to the Uptown complex:

(a) Phase 2 Accessible Route Plan and Parking Construction:

(i) The Owner / Contractor Defendants and the Engineer Defendant shall create an accessible route compliant with ANSI A117.1-1998 Secs. 303, 402, 403, 405, 406 and 505 along the sidewalks in Uptown outlined in Exhibit 1 to this Agreement (the "Phase 2 Accessible Route Plan"). Notwithstanding the agreement to comply with ANSI A117.1-1998 Sec. 303, 402, 403, 405, 406 and 505, the Settling Parties agree that Sections 303, 402, 403, 405, 406 and 505 will not apply and that no modification is necessary to any existing portion of the accessible route where (1) the cross-slope is 3% or less; and/or (2) the running slope is 6% or less. The parties agree that these slope ranges shall not be admissible as evidence in any subsequent proceedings. Any modifications to cross-slope, running slope, or slope of ramps along the accessible route will be made to comply with ANSI A117.1-1998 Secs. 303, 402, 403, 405, 406 and 505.

(ii) The Owner / Contractor Defendants shall ensure that at least two dumpsters on the north side of the accessible route in the Uptown complex have a side opening accessible to persons with disabilities.

(iii) The Owner / Contractor Defendants shall place three signs indicating the accessible route of travel in the locations identified on Exhibit 1 near the corner of Uptown Avenue and North Roosevelt.

(iv) The Owner / Contractor Defendants and the Engineer Defendant shall create vehicular parking spots located on accessible routes in the locations indicated on Exhibit 1. The parking spots shall (i) include an eight (8) foot wide space, and (ii) shall be located on a surface that does not exceed a 2% slope in all directions. At least two of the parking spots shall be van accessible and marked as such, as indicated on Exhibit 1. The parking spots shall also include appropriate signage indicating that they are available only for disabled individuals, and there shall be at least 72 inches between the ground and the bottom of such signage. Upon request of an existing or prospective tenant, the Owner / Contractor Defendants shall also

provide one accessible parking spot in a covered carport, at the same cost then offered to other tenants.

(v) Following the Court's approval of this Stipulated Order of Final Settlement, the Owner / Contractor Defendants shall be provided up to thirty (30) days to apply for all necessary governmental approvals from Canton Township, Michigan, to perform such work. The Owner / Contractor Defendants shall notify the FHC's attorney, in writing, upon receipt of approval by Canton Township, Michigan. Simultaneous with the application for any necessary governmental approvals from Canton Township, the Owner / Contractor Defendants shall begin soliciting bids from contractors to perform the work identified in Section 2(a) of this Agreement. The Owner / Contractor Defendants shall be provided sixty (60) days from the Court's approval of this Stipulated Order of Final Settlement to select a contractor(s) to perform the work described in this Section 2(a) of this Agreement. The Owner / Contractor Defendants shall notify the FHC's attorney, in writing, upon selection of a contractor. Upon receipt of any necessary governmental approvals and following selection of a contractor(s), the Owner / Contractor Defendants and the Engineer Defendant shall commence construction, and in any event, construction shall commence within ninety (90) days following the Court's approval of this Stipulated Order of Final Settlement, and the Owner / Contractor Defendants and the Engineer Defendant shall complete all work described in this Section 2(a) by November 30, 2010.

(b) The timelines and schedules outlined in Paragraph 2 of this Agreement are subject to change based on factors outside the control of the Owner / Contractor Defendants and Engineer Defendant, including, but not limited to, delays in approval by Canton Township and inclement weather. Any dispute concerning the parties' good faith compliance with the timelines and schedules shall be brought to the attention of the Court.

3. *Interior Modifications to the non-Liner Building Units.* The Owner / Contractor Defendants and the Architect Defendant shall make the following modifications to the covered residential Units in the non-Liner Buildings in Uptown :

(a)     Upon request of any tenant, decrease the depth or widen the door of closets that measure greater than 26" from the rear of the closet to the rear of the jamb and have doors that provide less than nominal 32" opening;

(b)     Upon request of any tenant, relocate the door to the rear of the jamb on closets that measure from 24" to 26" from the rear of the closet to the rear of the jamb and have doors that provide less than nominal 32" clear opening;

(c)     Relocate toilets so that the centerline is at least 16" from the side wall (this would not apply to any bathroom not required to meet the Fair Housing Act's requirement for maneuvering space, meaning a second bathroom in a unit that has a "B" specification bathroom as defined by the 1991 Fair Housing Act Accessibility Guidelines);

(d) Bevel the exterior side of primary entry door thresholds to no more than ½" change in level, with any change in level greater than ¼" beveled at 1:2;

(e) Increase the turning space in U-shaped kitchens that provide less than a 58" clear turning space;

(f) Lower thermostats so operating controls are no more than 54" from the floor;

(g) Lower outlets located over any obstructions (such as a kitchen cabinet) that are higher than 47" to maximum 46" AFF, or provide extenders to the same height, if no comparable outlet is available in an accessible location.

(h). *Timing of Modifications*. With respect to any ANSI Type A units, items 3.(a)-(g) above shall be completed within 90 days after entry of the Court's approval of this Stipulated Order of Final Settlement, without request by any current occupant and without awaiting turnover of possession to a new tenant. With respect to all other covered Units, items 3.(c)-(g) above shall be completed when the current occupant vacates the Unit and prior to any re-let of the Unit; provided, however, that the modifications set forth in items 3.(c)-(g) shall be completed in all covered Units above within 3 years after entry of the Court's approval of this Stipulated Order of Final Settlement, regardless of whether the Unit has been re-let within that period. With respect to the remaining items, they should be completed within sixty (60) days of tenant request.

(i) *Notice to Current Tenants*. Within 60 days after entry of the Court's approval of this Stipulated Order of Final Settlement, the Owner / Contractor Defendants shall notify all current tenants that the modifications set forth in items 3.(a)-(g) above will be made at the tenant's request, and without cost to the tenants.

(j) *Model Units or Units Shown to Prospective Tenants*. All Model Units or Units used for viewing by prospective tenants of Uptown shall have all modifications identified in items 3.(a)-(g) above completed within ninety (90) days after entry of the court's approval of the Stipulated order of Final Settlement. The Owner / Contractor Defendants shall inform prospective tenants that modifications identified in items 3.a.(1 through 2) above shall be made at the tenant's request, and without cost to the tenant.

4. *Interior Modifications to the Liner Building Units*. The Owner / Contractor Defendants shall make the following modifications to all residential units located in Liner Buildings A and B located at the corner of Cherry Hill Road and Ridge Road, Canton, Michigan:

a. *Doors*:

(i) All balcony sliding doors shall be modified so as to provide for a nominal 32" width. All balcony doors shall be surveyed and all non-compliant doors shall be brought into compliance according to the timetable in paragraph 4.(f) below.

    (ii) All bedroom closet doors shall be modified so as to provide a minimum of a nominal 32" clear opening space. All bedroom closet doors shall be surveyed and all non-compliant doors shall be brought into compliance according to the timetable in paragraph 4.(f) below.

    (iii) All linen closets that do not allow for full wheelchair passage (nominal 32" clear minimum and if greater than nominal 24" deep) shall have deeper shelves installed, upon any tenant's request, so as to bring the shelves closer to the door.

b. *Thermostats*:

    All units will be surveyed and all non-compliant thermostats shall be brought into compliance with the Fair Housing Act Accessibility Guidelines according to the timetable in paragraph 4.(f) below. .

c. *Accessible Routes*:

    (i) All entry thresholds shall be surveyed and modified (beveled) according to the timetable in paragraph 4.(f) below so as to provide for a maximum ½" above the hallway floor or in the alternative the threshold must be ramped and must slope no greater than 1:2. .

    (ii) Upon request of any tenant, all balcony thresholds shall be modified, if necessary, so as to provide for an exterior maximum 4" from the interior floor level.

d. *Bathrooms*:

    (i) All bathrooms shall be surveyed and modified, if necessary, according to the timetable in paragraph 4.(f) below so as to allow a minimum 16" clearance from the side wall to the centerline of the toilet.

    (ii) Upon request of any tenant, Specification A bathrooms or the designated Specification B bathrooms shall be modified, if necessary, so as to allow 30" x 48" clear floor space.

e. *Other Modifications Based on Accessibility Requests to Be Made By Owner / Contractor Defendants.*

    Owner / Contractor Defendants will make reasonable modifications to any liner unit occupied or to be occupied by a person with a disability if such modifications may be necessary to afford such person full enjoyment of the premises at tenant's expense.

(f). *Timing of Modifications.* Any modifications in items 4.(a)(i) & (ii), (b), (c)(i), and (d)(i) above that are required under this Stipulated Order shall be completed when the current occupant vacates the Unit and prior to any re-let of the Unit; provided, however, that these required modifications shall be completed in all

covered Units above within 3 years after entry of the Court's approval of this Stipulated Order of Final Settlement, regardless of whether the Unit has been re-let within that period. With respect to the remaining items in paragraph 4, above, all of which are available on request, they shall be completed within sixty (60) days of tenant request.

6. *Other Relief.* Defendants agree to pay the total sum of Forty Five Thousand Dollars ($45,000.00) to FHC for damages incurred by it in prosecuting this action through the signing of this Stipulated Order of Final Settlement, for programs undertaken to counteract the effect of allegedly inaccessible units and routes at Uptown, to conduct educational programs concerning accessibility, to promote best practices in the design and construction of covered multifamily properties, and to reimburse them for expenses related to their investigation, inclusive of their attorneys' fees. The Defendants agree to pay said money within ten (10) business days of the date of entry of this Stipulated Order of Final Settlement by wire transfer of that amount to counsel for Plaintiff at Relman and Dane, PLLC 1225 19th Street, N.W. Suite 600, Washington, D.C. 20036-2456.

7. *Release of Claims.* In consideration of the promises made by the parties herein, FHC forever discharges and releases, individually and collectively, all Defendants and their respective past, present, or future directors, shareholders, officers, insurers, employees, members, agents, attorneys, partners, accountants, joint venturers and representatives (collectively, "Released Parties") from any and all claims, demands, causes of action, known or unknown, that it ever had or now has against the Released Parties by reason of any actual or alleged act, omission, transaction, practice, occurrence, or other matters relating in any way to Uptown, and the areas of Uptown and/or the matters covered in Sections 2, 3, and 4 of this Agreement that occurred before the date of this Stipulated Order of Final Settlement. This release of claims includes, but is not limited to: (a) All claims arising out of or related to any federal, state and/or local laws including, without limitation: the federal Civil Rights Acts of 1866, 1871, 1964 and 1991; the Americans with Disabilities Act of 1990; the Michigan Elliott-Larsen Civil Rights Act; the Michigan Persons with Disabilities Civil Rights Act; and the Fair Housing Act, as each may have been amended from time to time; and (b) All claims arising out of or related to any contract; any and all other federal, state or local constitutions, statutes, rules or regulations, or under any common law right of any kind whatsoever, or under the laws of any county or political subdivision, including, without limitation: all claims for any kind of tortious conduct (including, but not limited to, any claim of defamation or distress or invasion of privacy); violation of public policy; negligence; promissory or equitable estoppel; breach of policies, rules, regulations, handbooks or manuals; breach of express or implied contract or covenants of good faith or fiduciary duty; and/or failure to pay in whole or part any payments of any kind whatsoever.

8. *No Admission of Liability.* This Agreement does not constitute an admission by any of the Released Parties (or any one of them individually) of any wrongful action or violation of any federal, state, or local statute or common law rights. The Released Parties specifically deny any wrongful action or conduct on their part. The parties make this Agreement solely in the interest of avoiding the costs of litigating the Intervenor's Complaint related to the matters addressed in Sections 2, 3, and 4 of this Agreement.

9. *Consultation with attorneys.* The parties acknowledge that they have been represented by their own attorneys throughout all of the negotiations prior to the execution of this Agreement. The parties further acknowledge that they executed this Agreement after being advised to consult with counsel of their choice prior to executing the Agreement and after having an opportunity to consult with such counsel. FHC further acknowledges that it has read this Agreement carefully; that it had an opportunity to have its provisions explained to them by its attorneys; that it fully understands the terms and significance of this Agreement; that it has signed it voluntarily and of its own free will; and that its intends to abide by its provisions without exception. By executing this Agreement, FHC represents and acknowledges that it does not rely, and has not relied, upon any representation or statement made by Defendants or their respective attorneys with regard to the subject matter of the Lawsuit, First Amended Lawsuit, Third Amended Lawsuit, other than the written statements set forth in this Agreement.

10. *Severability.* If any term or provision of this Agreement is declared by any Court of competent jurisdiction to be invalid or unenforceable, the remaining provisions of this Agreement shall remain valid and binding on the parties.

11. *Other.* This Agreement sets forth the entire agreement among the Settling Parties with respect to the matters set forth herein and supersedes all prior agreements, arrangements, and understandings among the parties. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state of Michigan. Should any provision of this Agreement require interpretation or construction, it is agreed by the parties that the court (or other entity) interpreting or construing this Agreement (or the Exhibits hereto) shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared the Agreement (or Exhibits hereto), it being agreed that all parties (by their respective attorneys) have participated in the preparation of all provisions of this Agreement. This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, distributees, executors, administrators, personal representatives, successors, insurers, and assigns. This Agreement may not be used as evidence in any subsequent proceeding, or any other matters related to litigation of the Lawsuit, First Amended Lawsuit, and/or Third Amended Lawsuit, except in a proceeding in which any of the parties alleges a breach of, or otherwise seeks enforcement of, this Agreement or interposes this Agreement as a defense.

12. *Counterparts; Facsimiles.* This Agreement may be executed in counterparts which, when taken together and reflect the signatures of all parties, shall be deemed a fully executed agreement for all purposes. Copies and other facsimiles of this Agreement (including any ".pdf" or "fax" copy) including all signatures, shall be deemed the same as the original for all purposes.

SIGNATURES ON NEXT PAGE

So agreed: FAIR HOUSING CENTER OF SOUTHEAST MICHIGAN, INC.

By: _____

Its: EXECUTIVE DIRECTOR

Date: July 13, 2009


So Agreed: BEZTAK PROPERTIES

By: _____

Its: General Counsel

Date: 7/8/9


So Agreed: BEZTAK COMPANIES

By: _____

Its: General Counsel

Date: 7/8/9


So Agreed: UPTOWN INVESTORS L.L.C.

By: _____

Its: General Counsel

Date: 7/8/9


So Agreed: MONOGRAM HOMES

By: _____

Its: General Counsel

Date: 7/8/9

**SIGNATURES CONTINUED ON NEXT PAGE**

So Agreed: WARNER, CANTRELL, & PADMOS, INC.

By: _____

Its: PRESIDENT

Date: 7-16-9


So Agreed: LOONEY, RICKS, KISS, ARCHITECTS

By: _____

Its: _____

Date: _____

So Agreed: **WARNER, CANTRELL, & PADMOS, INC.**

By: _____

Its: _____

Date: _____

So Agreed: **LOONEY, RICKS, KISS, ARCHITECTS**

By: _/s/_____

Its: _PRESIDENT_____

Date: _7/9/09_____

## CERTIFICATE OF SERVICE

      I hereby certify that on **July 28, 2009,** I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system which will send notification of such filing to the following: **Denise M. Heberle of Heberle & Finnegan PLLC, Theresa L. Kitay, Brett Rendeiro, Stephen M. Dane and John Mark Finnegan,** and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participant: none.

      MILLER CANFIELD PADDOCK and STONE, P.L.C.

      By:  s/Leigh R. Greden (P61859)
           101 North Main, 7th Floor
           Ann Arbor, Michigan  48104-1400
           Phone:  734-663-2445
           Email:  greden@millercanfield.com

AALIB:563459.1\016321-00268